Rico, Demandante y Apelante, *v.* López, Demandado y Apelado.

Apelación procedente de la Corte de Distrito de Mayagüez en un caso sobre reconocimiento de hijo natural.

No. 1147.—Resuelto en julio 24, 1914.

Hijos Naturales—Testigos Interesados—Errores no Fundamentales.—No constituye error fundamental la admisión de prueba tendente a presentar a un testigo como a una persona que tiene contra la parte demandada una antigua y enojosa reclamación que la parte demandada se ha negado a reconocer, a los efectos de que la corte tenga en cuenta tal hecho al juzgar la fuerza probatoria de las manifestaciones del testigo en contra de los intereses del demandado, aun cuando dicha prueba no se haya presentado en realidad de verdad en el momento oportuno.

Id.—Manifestaciones Hechas por el Demandado en una Escritura—Prueba de que la Madre ha Tenido Otros Hijos.—No comete error fundamental la corte que en una acción de esta naturaleza admite como prueba las certificaciones del registro civil creditivas del nacimiento de otros hijos tenidos por la madre del demandante siendo soltera, y una escritura de donación en que el causante del demandado declaró solemnemente que carecía de hijos legítimos, legitimados y naturales, máxime cuando, como en el caso de autos, en la contestación se alegaron estos hechos como defensa.

Id.—Suspensión del Juicio.—No constituye error la suspensión del juicio de un día para otro, sobre todo después de haberse celebrado una larga sesión, a juzgar por el número de testigos que declararon y lo extenso de sus declaraciones.

Id.—Prueba Contradictoria—Pasión, Prejuicio o Parcialidad.—Cuando la prueba es contradictoria y el juez sentenciador decide el conflicto en favor de una de las partes, a menos que se demuestre que actuó movido por pasión, prejuicio o parcialidad, o que cometió algún error manifiesto, este tribunal aceptará su decisión como la justa y procedente.

Id.—Relaciones Carnales de la Madre con Otros Hombres.—En pleitos de esta naturaleza es admisible la prueba tendente a demostrar que la madre del demandante tuvo relaciones carnales con otros hombres en la época en que el demandante pudo ser concebido.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Angel A. Vázquez* y *Jacinto Texidor.*

Abogado del apelado: *Sr. José de Diego.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia dictada por la Corte de Distrito de Mayagüez el 13 de marzo de 1914 por la que se declaró sin lugar cierta demanda sobre reconocimiento de hijo natural.

En la demanda se alegó, en resumen, 1, que el demandante es tutor de la menor Gregoria Noema Rico y está autorizado expresamente por la corte para entablar esta acción; 2, que el Dr. Eurípides López falleció en Mayagüez el 13 de enero de 1914, en estado de viudez y sin dejar ascendientes ni descendientes legítimos; 3, que el demandado es el único hermano del doctor fallecido; 4, que el doctor López vivió en San Germán, en concubinato y sostuvo relaciones maritales ilícitas con Antonia Rico con quien procreó una hija que nació el 24 de diciembre de 1898 y fué inscrita en el Registro Civil de San Germán como hija natural de Antonia Rico, bajo el nombre de Gregoria Noema. Que durante sus relaciones, el doctor y la Rico eran solteros y podían casarse sin necesidad de dispensa alguna; 5, que con posterioridad al 24 de diciembre de 1898 el doctor López contrajo matrimonio, sin que procreara ningún hijo; 6, que el doctor López reconoció pública y privadamente como hija suya a Gregoria Noema, llamándola "hija" y ocupándose de su educación y sostenimiento, y 7, que desde su nacimiento, Gregoria Noema estuvo en la posesión continua del estado de hija natural del Dr. Eurípides López. La demanda termina suplicando que se dicte sentencia declarando que Gregoria Noema es hija natural reconocida del Dr. Eurípides López, con derecho a llevar el apellido de su padre y con todos los demás que las leyes le conceden

El demandado contestó la demanda alegando, en resumen, lo que sigue: 1, admite como ciertas las alegaciones primera, segunda y tercera,—esta última con cierta aclaración,—de la demanda; 2, niega la alegación cuarta por no ser cierto que el doctor López viviera en concubinato con Antonia Rico, ni sostuviera con ella relaciones maritales, ni con ella procreara hija alguna, y la admite en cuanto por ella se afirma que en

1898 el doctor y la Rico eran solteros, sin ligarles parentesco alguno; 3, admite la alegación quinta; 4, niega la sexta, y 5, niega la séptima.   Y como materia nueva constitutiva de oposición a la demanda, alega: (*a*), que el doctor López siempre vivió en San Germán, hasta dos años antes de su muerte, sin que le acompañara mujer alguna, excepción hecha del corto tiempo en que vivió su legítima esposa Doña Florencia Fradera; (*b*), que el doctor era de carácter dulce y caritativo, tenía una carrera productiva, y socorría a muchas familias pobres sin que estuviera ligado con ellas por ningún vínculo de parentesco; (*c*), que Antonia Rico en y antes del año 1898 realizaba actos carnales con varias personas siendo siempre soltera y procreando varios hijos que aun conservan solamente el apellido materno, y que desde principios del año 1898 hasta fines del mismo realizaba dichos actos especialmente con don Horacio Nieto, yendo públicamente a casa de éste de día y de noche; (*d*), que el doctor López no educó ni vivió con niña alguna en San Germán, ni menos con Gregoria Noema Rico; (*e*), que el doctor López de modo solemne, en una escritura de donación, consignó que carecía de hijos legítimos, legitimados, o naturales; (*f*), que Gregoria Noema Rico ha sido siempre educada y sostenida por su tío Juan Rico; (*g*), que el doctor López manifestaba públicamente que trataba de retirarse del ejercicio de su profesión y marcharse de paseo a Europa porque como carecía de hijos podía gastar su dinero sin que le hiciera falta a nadie; (*h*), que el doctor López nada manifestó al demandado con respecto a Gregoria Noema Rico, e (*i*), que ni Gregoria Noema Rico, ni su tío Juan hicieron nunca gestiones cerca del doctor López para que éste se aviniera a reconocer a la primera como hija natural.   La contestación termina suplicando que se dicte sentencia declarando sin lugar la demanda, con las costas a la parte demandante.

Celebrada la vista, en la que ambas partes ofrecieron y practicaron una larga prueba testifical y documental, la corte dictó la sentencia de que dejamos hecho mérito y contra la

cual interpuso la parte demandante el presente recurso de apelación.

En su alegato sostiene la parte apelante que la corte erró, 1, porque admitió pruebas ilegales; 2, porque abusó de su poder discrecional; 3, porque en contra del resultado de la prueba estimó que el demandante había dejado de probar por una preponderancia de la evidencia las alegaciones 4, 5 y 6 de la demanda, y 4, porque desestimó la demanda por el fundamento de que había prueba tendente a demostrar la existencia de algún otro padre posible de Gregoria Noema.

1. Forma parte de la transcripción de los autos un pliego de excepciones debidamente preparado y certificado. En él se consignan ocho tomadas durante la celebración de la vista. Tres se formularon mientras declaraba el testigo del demandante Juan Alvarez Almodovar, una cuando deponía la testigo del demandante Dolores Comas, una con motivo de la admisión de varios documentos presentados por el demandado, dos mientras prestaban su declaración los testigos del demandado Colberg y Sabater, y una por haber accedido la corte a suspender la vista a instancias del demandado. Esta última la examinaremos al decidir el segundo motivo de error alegado por la parte apelante.

La parte demandante presentó al testigo Alvarez Almodovar para probar que el Dr. López había reconocido ante él por diferentes medios y en varias ocasiones, que era padre de la niña Gregoria Noema. La demandada al repreguntar al testigo le interrogó sobre si tenía algún negocio pendiente con el demandado. El demandante se opuso y la corte permitió que se contestara la pregunta. Acto seguido la demandada presentó como prueba dos cartas escritas por el testigo al demandado en donde el testigo pide al demandado que arregle cierta antigua reclamación de la Sucesión Stefany contra el demandado. El testigo está casado con una hija del Sr. Stefany. En las cartas se habla de la declaratoria de herederos del Dr. López y en una de ellas se dice que si no se arregla el asunto "iremos a la acción civil y si no a la

otra,'' y en otra se pide al demandado ''se sirva como un rasgo generoso hacer un arreglo amistoso con nosotros con lo cual se echará el punto final de tantas amarguras, de tantos sentimientos que motivaron los sucesos pasados'' El demandante se opuso a la admisión de las cartas y esto no obstante fueron admitidas por la corte. Y, por último, declarando el testigo, entonces por parte del demandado, reconoció una carta que había recibido del abogado del demandado relativa a la reclamación de la Sucesión Stefany, en la cual se le dice, en esencia, que el demandado nada tiene que arreglar porque nada debe. Reconocida la carta, se presentó como prueba y fué admitida, a pesar de la oposición del demandante.

La oposición del demandante en los tres casos de basó principalmente en que las pruebas eran impertinentes por ser extrañas al asunto que se debatía. Sin embargo, las pruebas claramente tienden a presentar al testigo ante la corte como a una persona que tiene contra la parte demandada una antigua y enojosa reclamación que la parte demandada se ha negado a reconocer, a los efectos de que la corte tenga en cuenta tal hecho al juzgar la fuerza probatoria de las manifestaciones del testigo en contra de los intereses del demandado en este pleito. Tal vez el momento en que se presentaron las dos primeras cartas no fué el oportuno, pero de un análisis completo de los hechos, no vemos que se haya cometido por la corte de distrito ningún error fundamental que pueda servir de base a la revocación de la sentencia.

La excepción establecida con motivo de la declaración de la testigo Dolores Comas, carece de fundamento. A repreguntas del demandado la testigo contestó que había solicitado la recomendación del doctor con la garantía de tres señores amigos suyos y el doctor la recomendó al Sr. Forés ''para que activara la cosa.'' Eso es todo lo que aparece de los autos. No vemos qué influencia pueda tener esa contestación en la decisión de este pleito, por lo menos en la forma en que aparece del récord.

La excepción relativa a la admisión de ciertos documentos presentados por la parte demandada, ocurrió como sigue. Ya hemos visto que el demandado alegó en su contestación que la madre de Gregoria Noema había tenido diferentes hijos siendo siempre soltera, y que el doctor López había declarado solemnemente en una escritura de donación que carecía de hijos legítimos, legitimados, y naturales. En el acto de la vista el demandado presentó las certificaciones del Registro Civil creditivas del nacimiento de los hermanos de Gregoria Noema y la copia de la escritura de donación, y, a nuestro juicio, al admitir dichos documentos como prueba, la corte no cometió el error que se le atribuye. Los documentos tendían a probar hechos consignados en la contestación, cuya eliminación no consta que fuera solicitada por el demandante, y que, una vez esclarecidos, permitirían al juzgador formar un concepto más exacto del caso que ante él pendía.

Tampoco cometió la corte error fundamental al admitir una carta y un cheque del doctor López reconocidos por el testigo Colberg, y al permitir declarar al testigo Sabater y presentar una copia de una carta del doctor López cuya autenticidad fué reconocida por el demandante. Por la primera carta y el cheque se tendía a demostrar que el doctor López enviaba dinero a personas de quienes no era pariente y por la declaración de Sabater a explicar ciertas manifestaciones hechas por uno de los testigos del demandado relativas a otro pleito sobre reconocimiento de cierta joven que decía ser hija natural del doctor López.

No se trataba, pues, de hechos esenciales, pero no puede dejarse de reconocer que, sin serlos, contribuían a aportar mayor luz sobre las circunstancias del caso, y que, en tal sentido, eran pertinentes en un pleito de esta naturaleza. Además, aun cuando se llegara a la conclusión de que la carta del Doctor López presentada por el testigo Sabater era enteramente extraña a este pleito y por ende impertinente, el error que se habría cometido al admitirla como prueba, no llevaría consigo la revocación de la sentencia por no ser fundamental.

2. El segundo error se refiere a que la corte abusó de su discreción al admitir las pruebas a que nos hemos referido y al suspender la vista del pleito.

De lo que hemos consignado anteriormente, se deduce que la corte no abusó de su discreción al admitir las pruebas, como sostiene la parte apelante. Y en cuanto a la suspensión del juicio, nos parece enteramente insostenible la excepción. El juicio comenzó a celebrarse en un determinado día y después de una sesión que tuvo necesariamente que ser larga a juzgar por el número de testigos que declararon y lo extenso de sus declaraciones, la parte demandada solicitó que se suspendiera la vista para continuarla al siguiente día y la corte accedió. La única objeción del demandado consistió en que sus testigos eran demasiado pobres para permanecer una noche en Mayagüez.

3. Hemos examinado cuidadosamente las pruebas practicadas por ambas partes y, a nuestro juicio, existe entre ellas un verdadero conflicto en puntos esenciales.

Gregoria Noema; su tío Juan Rico, y otros de sus familiares; su padrino Juan Alvarez Almodovar; varios sirvientes que fueron de la casa del doctor López; la señora Comas y su esposo, amigos del doctor López, y otras personas más se refieren en sus declaraciones a actos realizados por el doctor que de ser ciertos demostrarían que había sostenido relaciones amorosas con Antonia Rico, que como resultado de ellas había nacido la niña Gregoria Noema y que había atendido y reconocido a ésta como a su verdadera hija.

Por el contrario el doctor López, un hombre a quien todos los testigos, así los del demandante como los del demandado, presentan como ejemplo de corrección, manifiesta en un documento solemnemente y en repetidas ocasiones ante varias personas, que carecía de hijos, y tres testigos, uno de ellos sobre todo dando detalles completos, tienden en sus declaraciones a demostrar que Antonia Rico llevó relaciones amorosas con

el escribano de San Germán y luego juez de Arecibo don Ho-
racio Nieto y que como resultado de esas relaciones fué que
nació la niña Gregoria Noema.

El juez sentenciador decidió el conflicto en favor del deman-
dado y como no se nos ha demostrado en modo alguno que al
actuar así lo hiciera movido por pasión, prejuicio o parcialidad
o que cometiera algún error manifiesto, debemos aceptar su
decisión como la justa y procedente

Creemos oportuno transcribir aquí lo que dijo esta Corte
Suprema, por medio de su Juez Sr. MacLeary, en el caso de
*Quevedo* v. *Sucesión Pino,* 15 D. P. R., 686, 693:

"El principio sencillo de que el juez sentenciador tiene mejores
oportunidades que un tribunal de apelación para apreciar la credi-
bilidad de las declaraciones testificales ha sido formulado en térmi-
nos perspícuos y pintorescos por un distinguido jurisconsulto del
estado de Missouri, en la forma siguiente. Sustancialmente se expresa
así: 'La verdad no surge siempre valiente y desnuda, sino más bien
modestamente, de un extracto impreso presentado a un tribunal de
última instancia. Con frecuencia se esconde en apartados rincones
y lugares, visibles solamente a los ojos de la mente del juez que conoce
originalmente del caso. A él no se le escapa la mirada furtiva, el
rubor de una conciencia avergonzada, la duda, el tono sincero, el petu-
lante o el despreciativo, la vehemencia, la calma, el bostezo, el suspiro,
la ingenuidad o la astucia y sagacidad, el poco respeto a la solemni-
dad de un juramento, o la completa inteligencia de lo que ello signi-
fica, el continente y el semblante de la persona que ocupa la silla
destinada a los testigos. El rostro desvergonzado del falsario, la
locuacidad del testigo aleccionado al recitar lo que se le enseñara,
o la excesiva vehemencia de un testigo pronto en sus respuestas, así
como el semblante leal y franco del testigo verídico, son circunstan-
cias todas que sólo por él pueden ser fielmente apreciadas. En resu-
men la declaración de un testigo puede ser tal que después de impresa,
y transcrita en los autos del tribunal de apelación parezca haber sido
emitida por los labios de un angel de pureza, y sin embargo, puede
que ninguna persona que la oyera en primera instancia hubiere creido
palabra alguna de la misma; y otro testigo puede declarar en forma
tal, que impresa su declaración, aparezca obscura y sin enlace alguno,
y sin embargo, puede que con respecto a ese testigo sucediera que no

hubiera una sola persona que le oyera declarar ante el tribunal inferior sin haber quedado plenamente convencida de la verdad de sus afirmaciones. Por consiguiente, en aquellos casos en que una cuestión de hecho haya de ser resuelta solamente por virtud de la credibilidad que ha de darse a testigos que declararon en contradicción unos de otros, el tribunal superior procederá con entera corrección confiando algo en las superiores ventajas del tribunal inferior al determinar el lado a que se inclinara la balanza en la apreciación de la prueba.' ''

4. El último de los señalamientos de error especificados por el apelante en su alegato, ha quedado implícitamente resuelto en contra suya al estudiar y decidir el tercero.

En el caso de *Rivera* v. *Díaz*, 19 D. P. R., 548, 552, esta corte, por medio de su Juez Sr. Aldrey, se expresó así:

"En la opinión redactada por el juez de la corte inferior para fundamentar su sentencia condenatoria, se resuelve eliminar las declaraciones de Juan Ortiz y Juan Santiago, testigos presentados por el demandado, porque en esta acción de filiación la cuestión a resolver es si el menor Ramón es hijo del demandado y no debe irse más allá de lo alegado, permitiendo evidencia tendente a justificar si tal niño pudo ser de otro padre, que para nada figuraba en las alegaciones del litigio.

"En verdad, esas declaraciones no debieron ser eliminadas, porque en pleitos sobre reconocimiento de hijos, la evidencia de que la demandante tuvo relaciones carnales con otros hombres en la época en que el niño pudo ser concebido, es pertinente si se ofrece para demostrar las relaciones sexuales con esos hombres en la época de la concepción, 5 Cyc., 660, y cuya teoría se halla consignada también en Wigmore, vol. 1, pág. 195, sec. 133, y en innumerables casos resueltos por las cortes, entre ellos los de *Bell* v. *State,* 124 Ala., 94; *Allred* v. *State (Ala.)*, 44 So. R., 60; *Short* v. *State,* 4 Harr. (Del.), 568; *Smith* v. *Yaryan,* 69 Ind., 445; 35 Am. Rep., 232.''

En el caso presente es tanto más aplicable la anterior doctrina, cuanto que expresamente el demandado alegó, en la materia nueva de su contestación, que la persona que reclamaba su filiación no era hija de la persona que se consignaba en la demanda, sino de otra cuyo nombre se indicaba.

Por virtud de todo lo expuesto, opinamos que debe confirmarse la sentencia apelada. .

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.